Good morning, ladies and gentlemen, and good morning to Judge Rovner, who, as you see, is here by video. Our first case for this morning is Carole Cheney v. Standard Insurance Company, 151794. So we're ready to hear from Ms. Herring. Good morning, Your Honor. May it please the Court. My name is Jacqueline Herring, and I represent the Appellants, Standard Insurance Company, and the ERISA plan. This is an ERISA disability case that was decided on a stipulated record under Rule 52, per the party's consent to the magistrate judge's jurisdiction. Plaintiff Carole Cheney's claim for disability benefits was denied by the plan's claims administrator, Standard Insurance Company. The District Court reversed that decision and determined that Ms. Cheney was entitled to benefits under the plan. So I have one maybe very basic question for you, which is what, in your view, we're supposed to make of the time between December 19th or 20th and January 3rd? Since, as I understand, Ms. Cheney did stay in the payroll through January 3rd. As a regular employee, I don't want to use the word active, because I know that's in the policy, but as a normal employee. And so it seems to be just this black hole, in your view. But I wonder what you have to say about that. Well, under the terms of the plan, it's very clear that coverage terminates when active work ends. And active work for Ms. Cheney ended no later than December 19th. And that's absolutely undisputed. So there is a But what, forgive me, forgive me. And by the way, there is a one or two second delay. So when I step on any of you, including my beloved judges, please forgive me. But what does the phrase, with reasonable continuity, mean in the definition of active work? Because that seems to indicate that there can be some breaks in the work schedule, and yet the employee is still actively at work. That's what I'm having a problem with. With reasonable continuity generally is considered full-time. Under this particular plan, full-time employment is not required in order to be a member. What is required in order to be a member is working 60% of the employer's usual schedule. So the reasonable continuity, and again, in this case, that's even a little shaky prior to December 19th, because there were periods of time where Ms. Cheney wasn't working at all. But back to Your Honor's question about that gap, that's a key problem for Ms. Cheney in this case. There is absolutely a two-week coverage gap. There is no question that she performed no work at all whatsoever after December 19th. And the plan- Well, I have exactly the same question, because if it wasn't vacation, what was it? They paid her like a, quote-unquote, active employee. Why isn't that enough, you know, to support? The plan has a very specific definition of what active work is, and what Kirkland may decide for purposes of their payroll status, make someone an active employee, and how they're going to code that employee for purposes of payment can't override the clear terms of the plan. And under the plan, active work specifically requires performing the occupational duties of your occupation. So are you saying that this couple of weeks is sick leave? I mean, she did get paid, so if the inference isn't that it shows that she was somehow still in active work status, I just have the feeling it must be something else, and I'm groping for what that is. And again, I think that's the plaintiff's burden to establish what that is. And one of the problems here with the district court's decision is the district court specifically acknowledged that there is no evidence in the record to support that Ms. Cheney was on a vacation during that two-week coverage gap. And then the court unfortunately went on to say, but there's also nothing to dispute it, putting the burden on standard in the plan to dispute the vacation theory that is in no place supported in the record. And the plan is just very clear. When you cease active work, your coverage terminates. Now, coverage can be continued during a leave of absence period. However, it's undisputed that Ms. Cheney's leave of absence didn't start until January 3rd, and a subsequent leave of absence doesn't revive coverage that is already terminated. Once coverage terminates, the only way to again become a covered member is if the employee again performs active work. And again, there's no evidence to support that. Sotomayor, you know, in footnote 10 on page 27 of the opening brief, you seem to be giving us an alternate basis for affirming the district court's finding that coverage continued long past December 20th. That is, coverage continues during the 180-day waiting period. Could we affirm on that basis? That's again an inherent problem with the district court's contradictory findings here. What the district court found in extending coverage during the nine-month leave of absence, which again, the plan specifies that a period of disability is not a leave of absence. By extending coverage during that nine months under a leave of absence, the district court had to find that that was not a period of disability. Why? The policy provides that a period of disability is not a leave of absence. Under your reading, time off cannot be characterized as a leave of absence unless the employee is capable of working during the leave. But could that provision also be read to mean that we do not automatically characterize a period of disability as a leave of absence unless the employee actually takes an official leave of absence? You know, that sentence is not what I would consider a model of clarity. And I guess I'm maybe not sure which sentence the court is referring to. A period of disability is not a leave of absence. So are you saying, I'm looking also back at footnote 10, that there are some kinds of leaves of absence that this covers, but the disability is covered under, let's say, the 180-day benefit waiting period, so as to keep the two concepts separate? Yes. There are a few different ways, and again, the plan spells out exactly when and how coverage terminates. Are you drawing a distinction between the termination of coverage, December 19th, and then this 180-day benefit waiting period? Because I'm not sure how they intersect. The 180-day benefit waiting period is the elimination period, essentially, for the plan, where if you are disabled, you have to be disabled for an entire 180-day benefit waiting period before benefits become payable. So that would require, again, a finding of disability during that 180-day waiting period. And I take it that waiting period begins on the date the person becomes disabled, and I'm not sure whether that means employment terminates then, or the person ceases to be a member then, or whatever, but it must be that there's a trigger date for the 180 days. There is a trigger date for the 180 days. Under the most simplest scenario, if someone got in a car accident, where we would have a very specific date, that would typically be the date that would trigger the 180 days. It's also typical what we see in these cases is that there's a day where the employee ceases work because the employee is unable to engage in active work. And that's, you know, they're definitional opposites. Active work means performing the duties of your occupation, and disability means unable to perform the duties of your occupation. And when the district court extended coverage under the leave of absence theory, the court found that she was not disabled during that period of time, because a leave of absence is not a period of disability, and yet then also determined that she was disabled during that period of time for purposes of awarding benefits. And that's, you know, one of many inherent contradictions in what the district court did in this case. So could we talk a little bit about... What evidence is there in the record that she could perform any legal work following her spinal surgery? If we read the definition of own occupation, as you suggest, what evidence supports a finding that there was some job within the scope of her law license that she could perform? If we're talking about, again, the surgery is nine months after her coverage terminated. Her last day of active work, and when her coverage terminated, was December 19th. So she's no longer covered as of the time of that surgery. And I do think the evidence that's in the record, and there isn't much after that point because it was so far into the future, but what the doctor's opinions were was there would be a period of time after recovery from surgery where she would not be able to work, but not a full 180 days that would satisfy the benefit waiting period. So there's two problems. Number one, she's no longer covered at that point, but even if she were, what the medical doctors found is that there would be, yes, a period of recovery, but it would not exceed the 180 days. She never went back to work. And the nine-month extension of coverage in this case is also factually unsupported. Ms. Cheney's leave actually ended at the end of July. It did not extend a full nine months. There's absolutely no evidence it extended nine months. The plan would potentially cover a leave of absence that extended nine months, but there's absolutely no evidence that Ms. Cheney's leave extended beyond July 31st. So again, there's multiple problems and contradictions and a complete lack of evidence for the district court to continue that coverage. And the concept of active work and disability then also infected how the district court considered what the amount or how the benefits should be calculated. Benefits are calculated under this plan as they typically are based on a percentage of the employee's pre-disability earnings. And under this plan, pre-disability earnings for a partner are defined as the tax year prior to your last day of active work. Again, there's no evidence that Ms. Cheney engaged in any active work after December 19, 2010. But again, after December 19, 2011. But again, the court extended under a vacation concept, which doesn't change the definition of active work. It simply extends coverage specifically for purposes of the member definition. But vacation has nothing to do with pre-disability earnings and active work. I have two observations. One is on the leave of absence. Did that have anything to do with her disability? According to Kirkland's documents, she was approved for a, quote, medical leave of absence. Ms. Cheney has vociferously disputed that it was a medical leave of absence, but that's what the records show, which still doesn't cover that two-week coverage gap that's in between when she stopped active work and when the leave of absence started on January 3rd. Well, that's the second observation because that extension of two weeks is necessary in to a year where she had much higher earnings, because obviously if it ended on December 19th, then you go back. Now, one of the things that confuses me about this is twice she ran for public office, the first one in 2010 and then one in 2011, which I don't want to get personal, but I know what it's like to run for office and try to practice law and to be elected, which is my problem. If she were doing two things, I think she ran for two offices, I believe, and then afterward it seems she's taken a new job as an administrative assistant or somebody to a congressman or something, so she's actually working. And this all muddles together, to me at least, on a disability, because she was compared to a job if she is a very hard-working, heavy litigator, et cetera, but she's also working out of the home, and I assume she's doing a lot of briefs and other things, but not actually flying here and there in depositions and other things. So I'm confused a little bit about the disability itself. Yes, and I think part of that is the district court was using evidence from nine months after coverage terminated and sort of backdating that into the December 2011 period of time when Ms. Chain was last working. As far as what the evidence shows and what we argued is that she was in fact taking time off to run for political office, not due to a disability. But again, none of that impacts the actual last day of active work, December 19th of 2011. All right, thank you very much. Thank you. Mr. Reynolds, William Reynolds. Good morning, Your Honors. Good morning. Thank you for letting me replace this court. The most important piece of evidence here in Carol Cheney's favor is that surgical record on October, or in August of 2012. Well, I'm not sure it is because, I mean, this is a benefit policy like all others, and the burden was on Ms. Cheney to show that she was entitled to benefits, and I don't see where she showed that at the relevant time she was capable of actively working. And I'm not sure I agreed with the magistrate judge's assessment of the alleged ambiguity of many of these governing provisions. For example, the meaning of active work, the meaning of some of the other key terms. To begin with, Ms. Cheney's cervical spine problems, her neck problems, go back in the record over 10 years. But she was working, nonetheless, with those problems. She was seeking treatment during that time. Yeah. She was working. Right, she was working. And she stopped, and she said she was disabled from working after December 19th. Correct. And she originally alleged, and the way that she alleges, and she continues to allege, that she was unable to work December 19th, 2011. Her leave of absence began January 3rd, 2012, because that's when Kirkland scheduled it to begin. And she has been unable to work since then as an attorney. But why does that mean that from December 20th to January 3rd, she was actively at work? The policy doesn't say on the payroll, and I really hate to adopt a rule that punishes an employer for simply paying somebody, even though maybe it didn't have to. It seems like a very undesirable rule. Maybe Kirkland should have issued a memo saying, effective December 20, you are at the beginning of your waiting period or something. And understandable. It's this weird gap. But I don't know why that translates into the district court's rather facile assumption, oh, people take vacation all the time. She must have been on vacation. The district court rightfully points out that Ms. Cheney, the way that she applied for benefits, the way that she alleged to Kirkland that she was unable to work anymore, was saying that I cannot work as of December 11th. December 11th was the last day that she submitted. 19th. I'm sorry, December 19th. December 19th is the last day that she submitted a billable hour. Right. Kirkland says, now, billable hours are not the same as active work under this policy. Billable hours are just hours that they could bill to a client. She never says that she wasn't actively at work. Actively at work because, under the definitions in the policy, actively at work includes regularly scheduled days off, holidays, or vacations. But it also says that those days count only if you're capable of work during that period of time. And here's the problem. And she affirmatively says that she isn't. Here's the problem with that interpretation. If you require the capability of active work, even when on vacation, even on holidays, something like that, the situation may arise where you leave work Friday afternoon. You go on Saturday, you're hit by a car. You're unable to work Sunday. You submit on Monday, your first day that you would have been scheduled to work, to resume work. You're unable to work. And the policy would have lapsed in that coverage. The same thing is if you're on vacation. Why? You become unsafe on vacation. I'm not sure I think you would have to read the policy that way. And it's most certainly not if you preannounce before you start the vacation that you can't work. That's surely a different situation from the one that you describe where you're unfortunately, you know, hit by a bus while you're off on vacation and it takes you a little bit of time to get the word to the plan. A reading of that policy under that strict definition, though, would invalidate no matter when you said. And the problem with Carol Cheney's condition is it was cumulative. It happened over years and years and years. There may not be a day that she specifically became disabled. But she said there was. That's the problem. Why is she not judicially estopped from claiming her disability began on any date other than December 20th? Is standard incorrect that she asserted that as the date of her disability when she applied for benefits? She alleges that that day is the day that she became unable to submit any more billable hours. At points in the record, she also says December 31st when she first submitted her application. And Kirkland says her last day of active work is January 3rd. Well, it doesn't really say that. They paid her up until January 3rd. Maybe they completed a pay period. I don't know why. But they draw a distinction between payment and active work, which is surely correct, because you're not actively working when you're on vacation. You're not actively working when you're on a sick leave. You're not actively working in a number of situations. So it's not too hard conceptually to see the difference. And I understand that. But what she's saying is that she's disabled. That's not incompatible with being unable to work. And that's what this Court has held as well. She could have been disabled in October prior to that. But she didn't say she was. She's making the point that she really cannot so much as sit at a computer and write e-mails to people, the sort of bare minimum of the kinds of things one does if one has a legal license. Forget about the litigation partner business, which it seems to me is inconsistent with the policy as well. And this Court can still affirm if they believe that she was disabled on December 19. Forgive me, but bottom line, on what date did her disability begin? And what is the best evidence that she could not perform the material duties of her job as of that date? Bottom line. Bottom line, she became disabled likely before December 19. She is disabled on December 19. But under the terms of the policy, her disability begins on January 3rd because that's when she transitions into active leave. This Court could find that her disability began on December 19 and could award benefits based on that. It would affect the benefit amount probably. But this Court can award benefits based on that. So can we back up? Judge Rovner was pursuing this also with your opponent. If we take as a given that she indeed meets the definition of disability in the policy, I can see what you're saying. There perhaps is an argument. We'll think about it under the policy for January 3rd. But there's also a challenge to the fundamental question whether she really is in fact disabled within the meaning of the policy at the relevant time, not nine months later or some future time. So if you could say a word about that. Of course. Prior to December 19, in November 21st of 2011, she undergoes a lumbar spine MRI. That lumbar spine MRI, which is not the most disabling portion, her cervical. The cervical, right. The lumbar spine finds a ruptured disc at L5-S1. On December 19th, which is the day that she, our date in question, she undergoes a cervical spine MRI. The cervical spine MRI shows degenerative changes in multi-levels of her spine. It sees disc protrusions, which are basically bulging discs. And because of that finding, her physical therapist says, well, maybe you should pursue additional treatment. She stops work. She stops work because her primarily aggravating position is sitting at a computer. Their head is torqued and she has to meet deadlines. She can't really adjust. She's tried ergonomic accommodations and they don't work. So through the record, she goes to physical therapy in the beginning of January. She goes to Dr. Johnson. She goes to physical therapy through January, March, April. She goes to Dr. Johnson in April. Dr. Johnson immediately prescribes a 12-week intensive pain program. Now, we're a few months after her disability, but this is all in line with what she's saying. So it's your basic position that the, I'll just call them comments, about other things she was doing are not properly part of this record, whether, you know, her runs for public office or other positions she was taking just have to be disregarded? Disability under the policy is her inability to do her own occupation, and her own occupation is a lawyer. I understand her own occupation is a lawyer, but I'm thinking that the things you do as a lawyer are office kinds of things. So if you're an office assistant and you can do that, it raises a doubt in my mind that you couldn't do lawyer things too. No, absolutely. But her runs for public office are not, they do not contain the same material duties as being a lawyer. So her allegations that she can't be a lawyer, it's in line. She's trying to change her profession. She's trying to do something else. It seems like it's way worse. Maybe I just have a different image of running for public office, but I don't know. I don't believe it's quite, you know, standing up doing the debates that the presidential nominees are doing at this point. No, I've known people who've run for school board, but still it's a demanding activity. And as I understand it, it is, she was able to modify her schedule, work on her own terms, that type of thing. Her problem is that she can't meet deadlines. She can't sit at the computer for eight hours a day. She can do it for an hour or two, but her law practice required that and her employer required that. And that was the, that's the ultimate issue here. You also contend that she could not concentrate mentally on complex matters. Would you say that running for office in a contested election, a person does not have to concentrate mentally on complex matters? Of course she has to concentrate mentally, but it's a different concentration and it's one that she tried, and ultimately she failed. This was something that she wasn't able to do. Now, her failure was made clear by the election results, but even if she had been, she underwent surgery in August. If she had won the primary, she would have probably had to drop out of the general election. She was in a cervical collar restricting her motion for over three months. The surgical report, which we didn't even get into, found findings that were more severe than the findings that Dr. Tata and Dr. Johnson originally found. And that has to be, I mean, that explains some of her pain complaints. That explains why she was saying this is so bad. The surgical procedure that they originally were going, that she was supposed to undergo, was a fusion. So fusing three levers. No, I realize they took a disc out, too. But I think that that's something that's rather rare. It was unexpected. And it's a very severe surgery, for which she's still undergoing treatment and she's still recovering and she's still unable to be a lawyer. What still comes back to this issue, as far as I'm concerned, is this December 19th. It's obviously very important because, whatever the reason, if she, the way it's set up, it's obvious that a policy was set up so that she would be able to go back a year, which would probably almost always be a better earning year. This happens to be the opposite. That was the year that she was doing, she was trying to get some political office. I think you mentioned she had other absences for whatever reason, maybe disability problems. So she had a bad year, a relatively bad year in 2010, and then a better year in 2011. And it's jumping back to 2010, which is another one of the things that this December 19th would dictate, unless you jump forward with this presumed vacation into January. That's a very important step when you're talking about which benefit she's going to get. Without that, it's December 19th, without that jump. And it's an anomaly under the policy. Partners, there's no difference in the way the policy is written between equity partners and non-equity partners. Carol Cheney was a non-equity partner. So it makes sense for equity partners to relate back to your tax returns. They have to finalize everything. You see what your equity share is, that type of thing. For all intents and purposes, Carol Cheney was, she was a salaried attorney, and her salary at the date that she left was the salary that we're trying to get benefits on and that she's entitled to benefits for. The record reflects that she received that salary on a consistent basis for 12 months minus two weeks. Was her salary based on performance or was it just set? Because there was some, as I think you mentioned, her last distinguished billable hours. The last billable hours apparently were December 19th. There was no requirement, as far as I know, there was no requirement of billable hours submitted. I know that she was in this position partly because of her disability, partly because she couldn't be for many, many years a reliable employee. She was reliable enough that Kirkland compensated her very well, but she had to work from home and she had to have the ergonomic accommodations. And for whatever reason, she was elevated to partner but never elevated to equity partner. Her compensation was basically on a salaried basis, and I don't know any of the terms besides that. The salary, that's what I think Judge Whit alluded to, that may be on a pay schedule. Sometimes you get paid two weeks later for something you earned two weeks ago. Absolutely. I think that's what happened, actually. Kirkland doesn't break down, at least in the record, Kirkland doesn't break down which days that there were billable hours, aside from what we have right here. And there was no requirement that she logged any other time that she was working. It's very likely that she was working over and above the billable hours to the client. And that in and of itself, along with the policy definitions, could extend coverage to January 3rd. Thank you very much. All right. Thank you very much, Mr. Reynolds. Your time had run out, Ms. Herring, but if you want one minute, and promise not to exceed it, I will give it to you. Thank you. I want to start first with the concept of billable versus non-billable hours. The Kirkland records are very clear, and Plaintiff admitted in response to defendants' proposed findings of fact that Kirkland's records include all hours, both billable and non-billable. That's the way their records are set up. That's what's reflected in the record. The concept of you can be disabled and still able to work, while that may work in some other cases, under this plan, those are mutually exclusive. Active work is defined as performing the duties of your occupation. Disabled is defined as unable to perform the duties of your occupation. Under the terms of this plan, you cannot be both disabled and in active work status. A vacation does not extend your active work. For purposes of the definition of member, the plan specifies. Thank you. All right. Thank you very much. Thanks to both counsel. We will take the case under advisement.